ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2011 MAR -4  PM 3: 57

DEPUTY CLERK ___

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| TRAVELHOST, INC.,<br>a corporation<br><br>Plaintiff,<br><br>vs<br><br>JENNIFER LEA BRADY, ANDREW &<br>TIFFANY SEELEY, BRIAN S. THOMAS<br>ROBERT NICKERSON, JR., and DONNA<br>A. STAMATES.<br><br>Defendants. | Civil Action No. 3-11CV-454-M<br><br><br><br>COMPLAINT |

## COMPLAINT

Plaintiff TRAVELHOST, Inc. ("TRAVELHOST"), by and through its counsel,

for its Complaint against JENNIFER LEA BRADY ("Brady"), ANDREW & TIFFANY

SEELEY ("Seeleys"), BRIAN S. THOMAS ("Thomas"), ROBERT NICKERSON, JR.

("Nickerson"), and DONNA A. STAMATES ("Stamates"), and all those acting in

concert and conspiracy with them, both individually and collectively, alleges as follows:

### I. PARTIES

1.      TRAVELHOST is a Texas corporation with its principal office and place

of business at 10701 Stemmons Frwy, Dallas, Texas 75220.  The name TRAVELHOST

and the logo "TH" are registered trademarks belonging to TRAVELHOST.

2.      Brady is a resident of the State of North Carolina who may be served with

process is 801 Hawthorn Lane, Charlotte, NC 28204.

ORIGINAL COMPLAINT                              1

3.      Andrew & Tiffany Seeley are residents of the State of Nevada who may be served with process is 1319 Silver Linden Way, Gardnerville, Nevada 89410.

4.      Thomas is a resident of the State of Utah who may be served with process is 1211 Third Ave., Salt Lake City, Utah 84103.

5.      Nickerson is a resident of the State of California who may be served with process is 1620 15 City Court, Sacramento, California 98833.

6.      Stamates is a resident of the State of Tennessee who may be served with process is 1065 Tanglewood Ct., Hermitage, Tennessee 37076.

## II. JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this case involves a controversy between parties of complete diverse citizenship and the amount in controversy, both individually and jointly, exceeds $75,000.00.

8.      Venue is proper in this District pursuant to the Forum Selection Clause contained in the contracts Defendants entered into with TRAVELHOST. The contracts each specifically provides that "[v]enue over any disputes between the parties of this Agreement shall be solely and exclusively in Dallas, Texas, and any lawsuit between the parties to this Agreement shall be instituted and resolved solely and exclusively in a court of competent jurisdiction located in Dallas, Texas."

9.      Venue is also proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## III. NATURE OF THE ACTION

10.     This lawsuit arises out of contracts entered into between the parties whereby, *inter alia*, TRAVELHOST licensed to the Defendants the use of its trademarks,

brand recognition and goodwill associated with its extensive and long-standing business operations in serving the needs of the traveler through TRAVELHOST Magazine and its family of other publications, online products and services. The Defendants took full advantage of all of the contractual rights and benefits granted by TRAVELHOST, during which time, acting as the exclusive authorized representatives of TRAVELHOST, they established distribution arrangements with local hotel properties, fostered relationships with local retailers/advertisers offering goods and services to travelers, and distributed numerous issues of their respective local editions of TRAVELHOST Magazine -- keeping 100% of all local advertising revenues.

11.     TRAVELHOST strictly lived up to each and every one of its contractual obligations with the Defendants. Prior to or immediately after termination of their respective contractual relations with TRAVELHOST, the Defendants, and those acting in concert with them, commenced planning for and launch of a competitive publication known as "GETAWAY Magazine" ("competitive publication"), along with an associated website. The competitive publication is currently being distributed in all of the local markets covered by the Defendants' agreements with TRAVELHOST (Reno, Salt Lake City, Nashville, Sacramento and Charlotte). In each local market, the competitive publication has replaced TRAVELHOST Magazine. In each instance, distribution of the competitive publication constitutes a violation of the Defendants' respective contractual non-competition obligations to TRAVELHOST. As soon as possible upon learning about the competitive publications, TRAVELHOST demanded that the Defendants cease and desist their activities. They all refused.

12.    The actions of the Defendants resulted in the absence of local editions of TRAVELHOST Magazine in the marketplaces and concomitant monetary damages. They also have caused irreparable harm to the TRAVELHOST brand and reputation within the local markets, and, moreover, the mere presence in the markets of Defendants' competitive publication (especially where, as here, run by the same individuals representing TRAVELHOST) will make it immeasurably more difficult and costly, if not impossible, for TRAVELHOST to re-establish goodwill in the local communities, to obtain distribution of the TRAVELHOST publication, to establish relationships with local retailers/advertisers, etc.  Given those circumstances, it will be far more time-consuming and expensive to find new representatives willing to take on this challenge, not to mention the time and money required to be expended by TRAVELHOST to attempt to overcome the obstacles created by the Defendants' competitive actions. TRAVELHOST has advertised the availability of each of the respect markets since termination of the contractual relations without success.

13.    In addition to their individual activities in direct violation of their contractual non-competition obligations, Defendants, commencing at least as early as the Spring/Summer of 2010, have been engaged in a scheme in concert and in conspiracy with each other and other third parties for the express purpose of:  a) creating a separate corporate entity (Getaway Media, LLC); b) commencing publication and distribution under the new entity's name of another publication directly competitive with TRAVELHOST Magazine in their respective designated areas and other market areas now or formerly serviced by TRAVELHOST; and c) seeking to induce other former or existing distributors/associate publishers of TRAVELHOST to terminate their

relationships with and/or breach their respective contractual obligations to TRAVELHOST and become distributors of the competitive publication.

## IV. FACTUAL BACKGROUND

14.     Defendant Brady entered into an Assignment of Distributorship Agreement and Optional Associate Publisher Agreement (collectively "Agreements") with TRAVELHOST effective December 7, 2007.   Pursuant to the Distributorship Agreement Brady agreed, *inter alia*, to use her best efforts to distribute the publication and to sell advertising within the designated area which consisted of the Charlotte, North Carolina metropolitan area ("Designated Area").   By amendment of March of 2009, Brady agreed to purchase from TRAVELHOST and to accept delivery of not less than 20,000 copies of each quarterly issue of the Charlotte, NC local edition of TRAVELHOST Magazine.   Brady was an active distributor and associate publisher ("distributor/AP") in accordance with the terms of the Agreements until March of 2010. As of March of 2010, Brady owed $25,593.00 to TRAVELHOST for the October 25, 2009, and January 10, 2010, issues of the local edition of TRAVELHOST Magazine, and she was in default for failure to timely purchase and distribute the publication.   In March of 2010, the parties entered into a letter agreement providing, inter alia, for a mutual termination of the Agreements, a express reaffirmation by Brady of her non-compete obligations, Brady's agreement to cooperate and assist any new distributor/AP for the Charlotte market, and a mutual release of claims (including a release by TRAVELHOST of the outstanding indebtedness of Brady) in consideration for the mutual undertakings.

15.     Defendants Seeleys entered into a Distributorship Agreement and an Optional Associate Publisher Agreement (collectively the "Agreements") with

TRAVELHOST effective May 30, 2008. Pursuant to the Agreements, the Seeleys agreed, *inter alia*, to purchase from TRAVELHOST and to accept delivery of not less than 10,000 copies of each quarterly issue of the Reno, Nevada local edition of TRAVELHOST Magazine. Defendants also agreed to use their best efforts to distribute the publication and to sell advertising within their Designated Area, which consisted of the Reno, Nevada metropolitan area. On April 12, 2010, the Seeleys gave notice of their intention to terminate the Agreements effective July 12, 2010. At the time, the Seeleys were indebted to TRAVELHOST in the amount of $11,916.67 under the Optional Associate Publisher Agreement, and they were also indebted to TRAVELHOST in the amount of $11,609.00 for the April 11, 2010, issue of the publication. The Seeleys remain indebted to TRAVELHOST in the total amount of $23,525.67.

16.    Defendant Thomas, acting as President/Owner of Verita, LLC, entered into an Assignment of Distributorship Agreement and Optional Associate Publisher Agreement ("Agreements") with TRAVELHOST effective May 9, 2008. Contemporaneous with execution of the Assignment of Distributorship Agreement, and as a condition precedent to TRAVELHOST's agreement thereto, Thomas personally executed an Assignment Addendum "A" warranting and representing, in pertinent part, that he agreed to personally be bound by the non-compete terms contained in paragraph 9 of the assigned Distributorship Agreement. Pursuant to the Distributorship Agreement, Verita agreed, *inter alia*, to use its best efforts to distribute the publication and to sell advertising within his Designated Area, which consisted of the Salt Lake City, Utah metropolitan area. During the term of the Agreements, Verita, LLC was allowed to expand the geographic area encompassed by the Designated Area on two separate

occasions, and, in addition, the parties agreed to an amendment to the Distributorship Agreement allowing Verita to reduce the distribution frequency from bimonthly to quarterly. On July 20, 2010, Thomas provided email notice of intent to terminate the Agreements effective October 30, 2010. Verita was obligated to, but did not, purchase and distribute the September 5, 2010, issue. As of February 1, 2011, Verita remained indebted to TRAVELHOST in the amount of $2,350.00 for the March 7, 2010, issue.

17.     Defendant Nickerson entered into a Distributorship Agreement and an Optional Associate Publisher Agreement ("Agreements") with TRAVELHOST effective March 7, 2003. Pursuant to the Distributorship Agreement, Nickerson agreed, *inter alia*, to use his best efforts to distribute the publication and to sell advertising within his Designated Area, which consisted of the Sacramento, California metropolitan area. During the term of the Agreements, several amendments were mutually agreed upon permitting the distribution frequency to be reduced from monthly to bimonthly to quarterly. By letter dated August 25, 2010, Nickerson gave notice of his intent to terminate the Agreements effective November 26, 2010.

18.     Defendant Stamates entered into an Assignment of Distributorship Agreement and Optional Associate Publisher Agreement ("Agreements") with TRAVELHOST effective November 5, 2003. Pursuant to the Distributorship Agreement, Defendant Stamates agreed, *inter alia*, to use her best efforts to distribute the publication and to sell advertising within her Designated Area, which consisted of the Nashville, Tennessee metropolitan area. In October of 2005, the parties mutually agreed to an amendment to the Distributorship Agreement authorizing Stamates to elect to distribute bimonthly, as opposed to monthly. By letter dated May 22, 2010, Stamates gave notice of

her intent to terminate the Agreements effective July 12, 2010. Stamates was obligated to, but did not, purchase and distribute the July 2010 issue of the local edition. Stamates is indebted to TRAVELHOST in the amount of $14,250.00 for the May 2, 2010, issue.

19.     Subsequent to execution of the respective Agreements, the Defendants and/or their designees traveled to TRAVELHOST's headquarters in Dallas to attend the multi-day BPS (Best Practices Seminar) classes. At BPS, Defendants received, among other information and materials: a) specific information relating to the layout of the Magazine and the proper manner of preparing and submitting a production packet; b) TRAVELHOST's confidential Production Manual; c) proprietary best practices gleaned from other distributors and associate publishers over the years; d) general sales guidance and tips; e) proprietary forms and information for use in connection with obtaining distribution and advertising business; and f) access to miscellaneous other proprietary information useful in connection with production of the Magazine, distribution of the Magazine, and the sale of advertising space in the Magazine. Information also was shared regarding the TRAVELHOST existing web site and planned upgrades to the web site, a password was provided for obtaining access to the associate publisher's room containing various confidential and proprietary information not available to the general public, and instructions were provided for populating and modifying information on that portion of the web site dedicated to each of the Defendant's the applicable local markets. In addition to TRAVELHOST Magazine, introduction was also provided to TRAVELHOST's various other products.

20.     Pursuant to the rights afforded the Defendants under the respective Agreements, Defendants solicited local businesses (the "advertisers") to place

advertisements in the applicable local editions of TRAVELHOST Magazine, and Defendants also entered into distribution agreements with area hotels and motels, whereby the hotels and motels agreed to place issues of the local editions of TRAVELHOST Magazine in their guest rooms.

21.    During the course of their Agreements with TRAVELHOST, Defendants distributed the following number of individual issues of TRAVELHOST within their respective Designated Areas: Brady: 10; Thomas: 10; Seeleys: 8; Stamates: 50; and Nickerson: 50.   Each of the Defendants sold advertising to local retailers and distributed the magazine in local hotels/motels and, perhaps, other distribution venues.   From inception of their relationships, Defendants received one hundred percent (100%) of all of the local advertising revenues generated through the local editions of the publication. Doing business as TRAVELHOST of [their respective market names], Defendants were able to establish relationships with local advertisers and hotels/motels doing business as TRAVELHOST taking advantage of the goodwill associated with the TRAVELHOST name.    In addition, Defendants utilized regional ad space afforded to them by TRAVELHOST, retaining 100% of any and all advertising revenues derived from said ads, and they utilized regional/national advertising space credits afforded to them by TRAVELHOST in varying degrees, again keeping 100% of any and all advertising revenues generated from those ads. Each of the Defendants was further permitted to take full advantage of the family of other TRAVELHOST products, both print and online, and each of the Defendants was at all times privy to information relating to TRAVELHOST's confidential marketing plans and initiatives.

22.     Paragraph 9 of the TRAVELHOST Distributorship Agreement entered into with Thomas, Brady and the Seeleys expressly provides as follows:

> "Distributor agrees that it will not, either directly or indirectly, engage or participate in a similar business or one competitive with Publisher, the Publication, any other authorized distributor of the Publication, or any other TRAVELHOST products within the Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement."

Paragraph 9 of an earlier version of the Agreements entered into by Nickerson and Stamates expressly provides as follows:

> "Distributor agrees that it will not engage in a similar business or one competitive with Publisher within the Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement."

23.     Defendants, individually and in concert with each other and other third parties, have, commencing at least as early as the Spring/Summer of 2010, been engaged in the planning for launch of a competitive publication to be distributed by them, either directly or indirectly through others associated with them, within their respective Designated Areas in direct competition with TRAVELHOST Magazine and in direct violation of the terms of the Agreements.  Defendants devised a scheme whereby they would:   a) create a separate business entity (Getaway-Media, LLC incorporated in Delaware); b) commence publication and distribution under the new entity's name of another publication directly competitive with TRAVELHOST Magazine in the respective Designated Areas --GETAWAY Magazine (hereinafter "Competitive Publication"); c) delay to the fullest extent possible formal termination of their respective agreements with TRAVELHOST with no intent of continuing to do business with TRAVELHOST (to prevent TRAVELHOST from locating new distributors for the market areas prior to the time that the Competitive Publications were ready for production and distribution); and d)

launch distribution of the Competitive Publications in the respective market areas as soon as practicable in order to maintain continuity of distribution.  In other words, Defendants, in concert with others, devised and carried out a carefully planned, surreptitious scheme to deliberately and flagrantly violate the terms of their respective Agreements.

24.     In conjunction with and as an integral part of their scheme, the Defendants also conspired to approach other existing TRAVELHOST distributors with the intent of enticing them to terminate their contractual relations with TRAVELHOST and/or to become a distributors of the Competitive Publication in violation of their contractual obligations to TRAVELHOST.  Acting through the newly formed entity and a website associated with the operations of the Competitive Publications, the Defendants, and those acting in concert with them, targeted all of TRAVELHOST's  market areas and commenced efforts to advertise for distributors of the Competitive Publications for each of those markets.

25.     Those who have been involved and/or acted in concert with the Defendants include, among others: a) Randy Duplecian (TRAVELHOST distributor for the Beaumont, Texas, market area from April 2006 until June 24, 2010); b) Diane Hansen (former feature editor for TRAVELHOST of Beaumont and TRAVELHOST of Reno/Lake Tahoe); c) Thomas Stamates (husband of Defendant Stamates who was, at all times, actively involved  with all aspects of the operations of TRAVELHOST of Nashville); and d) other currently unidentified third parties and former TRAVELHOST distributors.

26.     Defendant Brady launched GETAWAY Explore Charlotte with a May-July 2010 issue.  Defendants Seeleys launched GETAWAY Reno/Tahoe with a Summer

2010 issue. Defendant Thomas published a Fall 2010 GETAWAY Salt Lake, Provo & Park City issue. Defendant Nickerson published a January 2011 GETAWAY Sacramento issue. Many of the advertisers in the Defendants' Competitive Publications are identical, including, in a number of instances, the same advertisements. The Competitive Publications target the same markets, readers and distribution channels. The marketing media being used by the Defendants in conjunction with the Competitive Publications contains much of the same information as that included in the TRAVELHOST media kits for those markets. Defendants have distributed the Competitive Publications to most, if not all, of the same hotels/motels/distribution outlets previously receiving TRAVELHOST Magazine and in some instances relying upon the pre-existing distribution contracts between TRAVELHOST Magazine and those hotels/motels/distribution outlets. Each of the Competitive Publications launched by the Defendants is in direct competition with TRAVELHOST Magazine in the respective market areas.

27.    In December 2010, as soon as possible upon learning of the existence of the Competitive Publications, TRAVELHOST sent cease and desist letters to the Defendants demanding that the Defendants immediately cease any further involvement or activities in conjunction with that Competitive Publications, directly or indirectly. The letters also demanded that the Defendants cease and desist from their efforts to tortiously interfere with TRAVELHOST's business and contractual relations. Defendants were put on notice that, absent their voluntary written confirmations of compliance with the cease and desist demands, TRAVELHOST would pursue appropriate legal remedies, including, *inter alia*, damages, injunctive relief, recovery of attorneys' fees and court costs. The

Defendants have either failed to respond to the cease and desist demands or, in the case of Defendant Stamates, expressly refused to comply.

## V. FIRST CLAIM FOR RELIEF:

## BREACH OF CONTRACT -- BRADY

28.     TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

29.     Brady breached the terms of the March 8, 2010 letter agreement by failing to supply the documentation called for in the agreement and, in addition, by failing to abide by the terms of paragraph 9 of the Distributorship Agreement (the non-compete provision) which Brady expressly reaffirmed.  Furthermore, the representations made by Brady in reliance upon which TRAVELHOST granted special concessions to Brady in the letter agreement were either false or intentionally misleading.

30.     Brady had no intention to living up to the terms of the letter agreement at the time it was executed and, shortly thereafter, she commenced distribution of the Competitive Publication in Charlotte.  In addition to constituting a breach of paragraph 9 of the Distributorship Agreement, Brady breached the terms of the March 8, 2010 letter agreement.

31.     In reliance upon Brady's intended compliance with the terms of the letter agreement, TRAVELHOST granted to Brady a release of claims against Brady, including: a) any claims for damages arising from her failure to purchase and distribute TRAVELHOST Magazine of Charlotte prior to the effective date of termination of the parties' Agreements; and b) the amount of $25,593.00 owed by Brady for the October 2009 issue of TRAVELHOST of Charlotte.

32.     As a result of the Brady's breaches of the March 8, 2010 letter agreement, TRAVELHOST has suffered damages, and it has found it necessary to bring this legal action.  In addition to damages, TRAVELHOST seeks specific performance of the terms of the letter agreement together with recovery of court costs and attorney's fees incurred pursuant to the contractual provisions of the Agreements and pursuant to the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## VI. SECOND CLAIM FOR RELIEF:

### BREACH OF CONTRACT -- SEELEYS

33.     TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34.     The Seeleys were contractually obligated under the terms of the Optional Associate Publisher Agreement to pay an additional $11,916.67 beyond that paid upon execution of that Agreement, the payment of which was deferred by mutual agreement.  Furthermore, the Seeleys were contractually obligated under the terms of the Distributorship Agreement to pay the remaining outstanding balance owed to TRAVELHOST in the amount of $11,609.00 for the April 11, 2010, issue of the local edition of the publication.

35.     TRAVELHOST made demand upon the Seeleys to pay these contractual obligations to no avail.  The Seeleys are in breach of their contractual obligations.

36.     The aforementioned breaches of contract have proximately caused damage to TRAVELHOST in an amount of $23,525.67, together with interest on said amount at the maximum legal rate until paid in full.

37.   As a result of the Seeleys' breaches, TRAVELHOST has found it necessary to bring this legal action.  In addition to damages, TRAVELHOST seeks recovery of court costs and attorney's fees incurred pursuant to the contractual provisions of the Agreements and pursuant to the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## VII.  THIRD CLAIM FOR RELIEF:

## BREACH OF CONTRACT -- STAMATES

38.   TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

39.   Stamates was contractually obligated under the terms of the Distributorship Agreement to pay the remaining outstanding balance owed to TRAVELHOST in the amount of $14,250.00 for the May 2, 2010, issue of the local edition of the publication.

40.   TRAVELHOST made demand upon Stamates to pay this contractual obligation to no avail.   Stamates is in breach of her contractual obligation.

41.   The aforementioned breach of contract has proximately caused damage to TRAVELHOST in an amount of $14,046.50, together with interest on said amount at the maximum legal rate until paid in full.

42.   As a result of Stamates' breach and refusal to remedy that breach, TRAVELHOST has found it necessary to bring this legal action.  In addition to damages, TRAVELHOST seeks recovery of court costs and attorney's fees incurred pursuant to the contractual provisions of the Agreements and pursuant to the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## VIII. FOURTH CLAIM FOR RELIEF:

## BREACH OF CONTRACT -- ALL DEFENDANTS

43.     TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.     The covenant not to compete set forth in the Distributorship Agreements is enforceable inasmuch as: a) it is ancillary to or part of an otherwise enforceable agreement; to-wit, the Distributorship Agreement; b) the two-year time limitation is reasonable; c) the geographical area and scope of activity to be restrained are reasonable as corresponding precisely to the Defendants' Designated Areas; and d) the non-compete covenant does not impose any greater restraint than reasonably necessary to protect TRAVELHOST's goodwill and its business interests in the specific area of distribution of TRAVELHOST Magazine by Defendants.     Accordingly, it should be enforced in accordance with the provisions of the Texas Covenants Not To Compete Act, TEX. BUS. & COM. CODE ANN. § 15.50 et seq. (hereinafter "Act").

45.     The Defendants have clearly violated the covenant not to compete contained in Distributorship Agreements, and the Defendants have thereby breached the Agreements. As a result, TRAVELHOST has and will continue to sustain irreparable damages arising from that violation in an amount presently indeterminable. Among other things, Plaintiff is entitled to recover gross profits earned by Defendants from monies diverted to their use and benefit. Plaintiff sues for recovery of all such funds and for disgorgement of any profits realized by Defendants. In accordance with Section 15.51(a) of the Act, TRAVELHOST is not only entitled to injunctive relief, but also to recovery of those damages resulting from Defendants' violations of the covenant. Those damages



include, but are not limited to, the additional efforts, expenses and special accommodations which TRAVELHOST has been and will be required to incur or provide to any new distributor in the affected market areas in countering the negative impact of the Competitive Publications in the marketplace and the difficulties inevitably faced by any new distributor in seeking to compete with the Defendants.

46.    As a result of Defendants' breaches of the Distributorship Agreements, TRAVELHOST has found it necessary to bring this legal action.  In accordance with the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code and the express terms of the applicable Agreements between the Defendants and TRAVELHOST, TRAVELHOST is entitled to recovery of reasonable attorneys' fees, in addition to the recovery of direct and consequential damages, interest on those damages until paid in full, and applicable court costs.

## IX.  FIFTH CLAIM FOR RELIEF:

## TORTIOUS INTERFERENCE -- ALL DEFENDANTS

47.    TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.    Defendants set out upon a deliberate course of action commencing in early 2010 of willfully and intentionally targeting the markets of other former or existing TRAVELHOST local distributors for the purpose of seeking to interfere with TRAVELHOST's agreements and contractual relations, as well as pursuing a course of action intended to entice the current advertisers in and distribution outlets for the respective local editions of TRAVELHOST Magazine to discontinue their contractual



relations with TRAVELHOST and to switch their relations to the Competitive Publication started by the Defendants.

49.     In furtherance of their course of action, the Defendants, or those acting on behalf of the Defendants, communicated with certain of TRAVELHOST's existing local distributors recommending and encouraging them to fail to comply with their contractual obligations to TRAVELHOST, to cease doing business with TRAVELHOST, to breach their agreements with TRAVELHOST, and/or to commence active participation in the publishing and distribution within their designated area of the Competitive Publication in direct violation of their respective contractual commitments with TRAVELHOST.  The Defendants also communicated with the existing advertisers in and distribution outlets for TRAVELHOST Magazine for the express purpose of inducing them to terminate all relations with TRAVELHOST and to switch their relations to the Competitive Publication.

50.     At all times when engaging in the communications, the Defendants were fully aware of the fact that these other local distributors were parties to agreements with TRAVELHOST, and they were further aware of the fact that engaging in the acts being recommended would constitute violations of the terms of those agreements.  Defendants were also at all times aware that each of the advertisers and distribution outlets in the applicable market areas had existing contractual relations with and commitments to TRAVELHOST Magazine.

51.     As a direct and proximate result of the foregoing acts of the Defendants, and those acting in concert with them, TRAVELHOST has suffered injury, including, but not limited to, the breach by certain distributors of their agreements with TRAVELHOST

in various ways (ceasing to send in production packets, failing to purchase and distribute the local edition of TRAVELHOST Magazine, cutting off all communications with TRAVELHOST, and engaging in acts in violation of the non-compete obligations to TRAVELHOST). By reason of the acts encouraged and induced by the Defendants and those acting in concert with them, TRAVELHOST has been required to make extra efforts at attempting to locate new distributors for the adversely impacted designated areas. In addition, TRAVELHOST Magazine has suffered the loss of advertisers and distributors for TRAVELHOST Magazine in each of the Designated Areas. The damages and injury caused by the Defendants' acts are continuing in nature, and it is anticipated that TRAVELHOST will have difficulty in fully assessing and measuring the full extent of all of the damages and injuries caused to it.

52.    TRAVELHOST is entitled to recover from the Defendants those direct and consequential damages sustained by it as a result of the acts of tortious interference by the Defendants, exemplary damages, injunctive relief enjoining the Defendants and those acting in concert with them, all costs of court, and TRAVELHOST's reasonable attorney's fees.

## X. SIXTH CLAIM FOR RELIEF:

## CONSPIRACY – ALL DEFENDANTS

53.    TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.    In engaging in the foregoing acts, each Defendant was one member of a combination of 2 or more persons, the object of which was to accomplish one or more

unlawful purposes, to wit:  to tortiously interfere with TRAVELHOST's contractual and business relations with advertisers, distribution outlets and its other distributors, as well as to induce TRAVELHOST's advertisers, distribution outlets and distributors to terminate their contractual relations with and/or breach their contractual obligations to TRAVELHOST.  TRAVELHOST is not able at the time of this pleading to name each of the other members of the combination, but they include, among others, Randy Duplecian (former TRAVELHOST distributor for Beaumont, Texas, local edition from April 2006 until June 24, 2010); b) Diane Hansen (former feature editor for TRAVELHOST of Beaumont and TRAVELHOST of Reno/Lake Tahoe); c) Thomas Stamates (husband of Defendant Stamates who was, at all times, actively involved  with all aspects of the operations of TRAVELHOST of Nashville); d)  E. Michael Peterson (former employee of TRAVELHOST); and e) other currently unidentified third parties and former TRAVELHOST distributors.

55.    There was a meeting of the minds of all members of the combination on the object of the conspiracy and/or the course of action.

56.    Defendants, along with others acting in concert with them as part of the combination, committed a number of unlawful overt acts, as detailed hereinabove, in furtherance of the object and/or the course of action.

57.    As a direct and proximate result of the conspiracy and combination, TRAVELHOST has suffered injuries and damages.

58.    TRAVELHOST is entitled to recover from the Defendants, and all other members of the combination and conspiracy, jointly and severally, those direct and



consequential damages sustained by TRAVELHOST as a result of the course of action, exemplary damages, all costs of court, and TRAVELHOST's reasonable attorney's fees.

## XI. SEVENTH CLAIM FOR RELIEF:

### REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF -- ALL DEFENDANTS

59.     TRAVELHOST repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     By reason of the conduct of Defendants in violation of the terms of non-compete provisions of the Distributorship Agreements, as well as Defendants' tortious interference with TRAVELHOST business/contractual relations, TRAVELHOST has suffered substantial irreparable injury in an unascertainable amount.

61.     Unless enjoined by the Court, Defendants will continue to engage in the aforementioned course of action, and TRAVELHOST will suffer further irreparable injury and damages in an unascertainable amount, in that TRAVELHOST will lose a substantial amount of business and goodwill from hotels, advertisers and potential advertisers in said Designated Areas. Defendants' misappropriation of advertisers for its own benefit significantly harms the ability of TRAVELHOST and/or any other future distributor of TRAVELHOST Magazine in these market areas to continue to obtain business from the advertisers and to continue to use the distribution channels set up and developed through use by Defendants of the goodwill and brand recognition of TRAVELHOST. The irreparable injury threatened to TRAVELHOST absent grant of a preliminary injunction is actual and imminent.

62.     Defendants' actions, if not enjoined, threaten to put TRAVELHOST out of business in the impacted market areas, and, at a minimum, will significantly impair TRAVELHOST's ability to continue business in those market areas either independently or through any other distributor.

63.     Granting injunctive relief will not harm Defendants or the public interest, as TRAVELHOST merely seeks to prevent and enjoin improper and contractually forbidden competition.   Granting injunctive relief will promote the public interest in preserving the integrity of contract and fair competition.

64.     TRAVELHOST has no adequate or speedy remedy at law for the conduct of Defendants, and this action for injunctive relief is TRAVELHOST's only means of obtaining timely and adequate relief.

## XII. FIFTH CLAIM FOR RELIEF:

## CONSTRUCTIVE TRUST

65.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff is entitled to the equitable remedy of constructive trust, to be imposed by the Court upon all revenues received by Defendants for their actions in violation of the Agreement set forth herein, from their use of proprietary and confidential information that they obtained from TRAVELHOST, and from their activities in contravention of the non-competition provisions of their Agreements.

## XIII. ACCOUNTING

67.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if set forth herein.

68.     Plaintiff is entitled to a full and complete accounting from Defendants, reflecting any and all revenues received from (a) advertisers who initially bought advertisement in the TRAVELHOST publication and who now are advertising in Defendants' competitive publication; (b) revenues received by Defendants from the unauthorized use of any proprietary or confidential information furnished them by Plaintiff; and (c) any monies diverted from TRAVELHOST, whether or not received directly by Defendants.

## XIV.  ATTORNEYS FEES

69.     TRAVELHOST has found it necessary to employ the undersigned attorneys to prosecute this action and Plaintiff is therefore entitled to the recovery of reasonable and necessary attorneys fees incurred in connection with the claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, TRAVELHOST, Inc. prays for judgment in its favor and against the Defendants including the following remedies:

A.     Issuance of preliminary injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Section 15.51(a) of the Texas Covenants Not To Compete Act, upon motion, effectuation of service and proper notice, ordering the Defendants, as well as all others acting in concert or participation with them, to refrain immediately and pending the final hearing and determination of this Court from, among other things: (i) making any false or misleading statements about TRAVELHOST or TRAVELHOST Magazine to any person, including current and potential advertisers; (ii) soliciting advertisements from any past or potential future advertisers on behalf of the

Competitive Publication within the respective Designated Areas; (iii) competing with TRAVELHOST or engaging in actions in competition with TRAVELHOST anywhere within their respective Designated Areas; (iv) having any contact with any advertisers or potential advertisers in the Competitive Publication within the respective Designated Areas, directly or indirectly; (v) having any contact with any hotels/motels in the respective Designated Areas for the purpose of seeking or obtaining in-room placement of the Competitive Publication or interfering with TRAVELHOST's relationship with said hotels/motels; (vi) having any involvement whatsoever, directly or indirectly, with the publishing, distribution, marketing, or promotion of the Competitive Publication within the respective Designated Areas, or any other similar publication in competition with TRAVELHOST, for a period of a full two (2) years as provided in the Agreements; and (vii) having any contact or communications of any kind or nature with any former or existing distributors of TRAVELHOST for any reason or purpose whatsoever, including, but not limited to, encouraging the violation or breach of any contractual commitment to TRAVELHOST or encouraging the termination of any actual or prospective business or contractual relationship with TRAVELHOST.

B.      Order and direct Defendants, and all those acting in concert with them, to turn over to TRAVELHOST a list of: (i) all advertisers, businesses, hotels, and/or motels contacted by them for or on behalf of the Competitive Publication prior to the date of the filing of this Complaint; and (ii) all former and current distributors of TRAVELHOST who they have contacted or with whom they have communicated between the time-frame January 1, 2010, through the time of the filing of this Complaint.

C.     Upon final hearing, issue a permanent injunction enjoining and restraining Defendants, and all those in active concert or participation with them, from any of the conduct set forth in the above paragraph A for a period beginning on the day of entry of said order through two years after a complete cessation of said activities by the Defendants.

D.     Enter judgment in TRAVELHOST's favor and against Defendants, jointly and severally, for an award of actual damages proven, special damages, pre and post judgment interest at the maximum legal rate, and for TRAVELHOST's costs expended herein, including reasonable attorneys' fees, as permitted by the Distributorship Agreements and/or in accordance with Texas law.

E.     Award such other and further relief as is just and proper.

WINSTEAD PC
1201 Elm Street
5400 Renaissance Tower
Dallas, Texas 75270
214-745-5400
214-745-5390 (Facsimile)


Jay J. Madrid, Esq.          SB#12802000
jmadrid@winstead.com
Kristen L. Sherwin, Esq.     SB#24043918
ksherwin@winstead.com

ATTORNEYS FOR PLAINTIFF,
TRAVELHOST, INC.

John A. Price, Esq.          SB#16297700
10701 Stemmons Frwy
Dallas, Texas 75220
972-556-0541
972-432-8729 (Facsimile)

CO-COUNSEL FOR PLAINTIFF,
TRAVELHOST, INC.

ORIGINAL COMPLAINT                26

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Travelhost, Inc.

## DEFENDANTS

Jennifer Lea Brady, Andrew & Tiffany Seeley, Brian S. Thomas, Robert Nickerson, Jr. and Donna A. Stamates

(b) County of Residence of First Listed Plaintiff  Dallas County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Charlotte, NC 28204
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED  MAR - 4 2011  CLERK, U.S. DISTRICT COURT  NORTHERN DISTRICT OF TEXAS

3-11CV-454-M

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jay J. Madrid, Winstead PC, 1201 Elm Street,
Suite 5400, Dallas, Texas 75270; 214-745-5709

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC section 1332(a)

Brief description of cause:
Breach of Distributorship Agreement, including non-compete.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED: (See instructions)

JUDGE _____  DOCKET NUMBER _____

DATE  3-4-2011

SIGNATURE OF ATTORNEY OF RECORD  Jay J. Madrid

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____