**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TRAVELHOST, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-454-M-BK** |
| | § | |
| **JENNIFER LEA BRADY, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Order of Reference* (Doc. 79), Plaintiff's *Motion for Preliminary Injunction* (Doc. 30) has been referred to the undersigned for findings, conclusions, and recommendation. A hearing on the motion was held on January 6, 2012, and on January 13, 2012, the parties filed supplemental responses to issues raised during the hearing. (Docs. 92-94). For the reasons discussed below, it is recommended that Plaintiff's *Motion for Preliminary Injunction* (Doc. 30) be **GRANTED in part**.

## I. BACKGROUND

On March 4, 2011, Plaintiff brought suit against Defendants, Jennifer Brady, Tiffany Seeley and Andrew Seeley (collectively referred to herein as "the Seeleys"), Brian Thomas, Robert Nickerson Jr., and Donna Stamates, for breach of contract, tortious interference, and conspiracy. (Doc. 2). Plaintiff now moves for preliminary injunction to enjoin all Defendants from violating covenants not to compete. (Doc. 30).

Plaintiff, TRAVELHOST, Inc. (Travelhost) is the publisher of *Travelhost* magazine, which provides traveler information and advertising for businesses in over 50 local markets. (Doc. 32 at 5). *Travelhost* magazine is distributed through local distributers to hotels, motels,

and other locations frequented by tourists. *Id*. The Defendants are former distributers of *Travelhost* magazine who entered into distributorship agreements (the Agreements) [1] with Travelhost, in which Travelhost agreed to produce the magazine and Defendants agreed to use their best efforts to distribute and sell advertising space in the magazine within Defendants' respective designated metropolitan areas.[2] *Id*. at 5-8, 11-22, 37-46, 53-60, 76-82, 90-98. The Agreements granted Defendants a license to use the Travelhost's trademark and logo in connection with the promotion and distribution of the magazine. *Id*. The Agreements also included the following non-competition clauses:

As to Defendants Brady, Nickerson, and Stamates:

"Distributer agrees that it will not engage in a similar business or one competitive with Publisher within the Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement." (Doc. 32 at 16, 78, 97).

As to Defendants Thomas and the Seeleys:

"Distributer agrees that it will not, either directly or indirectly, engage or participate in a similar business or one competitive with Publisher, the Publication, any other authorized distributer of the Publication, or any other TRAVELHOST products within its Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement." (Doc. 32 at 39, 59).

---

[1] Defendants Brady, Thomas, and Stamates were assigned their respective Agreements. (*See* Doc. 32 at 11-12, 53, 90-91).

[2] Defendant Brady's designated area was Charlotte, North Caroline; the Seeley's designated area was Reno, Nevada; Thomas's designated area was Salt Lake City, Utah; Nickerson's designated area was Sacramento, California; and Stamates's designated area was Nashville, Tennessee. (Doc. 32 at 5-8, 11-22, 37-46, 53-60, 76-82, 90-98).

After a period of distributing and selling advertising under the Agreements, each Defendant terminated his/her agreement with Travelhost.[3] This suit stems from Travelhost's allegations that, prior to the termination of the Agreements, Defendants started a competing publication, GETAWAY magazine, in violation of the covenants not to compete. (Docs. 32 at 8-9; 92 at 6-8). Travelhost contends that GETAWAY targets the same audience, utilizes the same distribution points, and includes the same business advertisers as *Travelhost* magazine. (Docs. 31 at 4-5; 32 at 8, 112-120). Plaintiff further contends that, after discovering the Defendants' alleged violations of the covenants not to compete, it sent each Defendant a cease-and-desist letter. (Doc. 32 at 9).

All defendants, save Stamates and Thomas, concede that they are involved in GETAWAY magazine, but argue that they are not competing against Travelhost. (Docs. 40 at 9-10; 41-1 at 8-9; 44 at 7-9; 45-1 at 10, 12; 53 at 6; 53-1 at 7-9). Defendants Thomas and Stamates aver that they do not have any involvement in GETAWAY. (48-1 at 2; 62-1 at 6). Defendants also argue that the non-compete provisions are unreasonable, that Plaintiff's alleged injury is merely speculative, and that Plaintiff has unclean hands. (Docs. 40, 44, 47, 52). Travelhost now seeks a preliminary injunction to enforce the covenants not to compete. (Doc. 31 at 8).

## II. APPLICABLE LAW and ANALYSIS[4]

A preliminary injunction is an extraordinary remedy that should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of

---

[3] Defendant Brady's Agreement was terminated March 2010; the Seeley's Agreement was terminated July 2010; Thomas's Agreement was terminated October 2010; Nickerson's Agreement was terminated November 2010; and Stamates's Agreement was terminated July 2010. (Docs. 32 at 6-7; 41-1 at 7; 45-1 at 10; 48-1 at 7;53-1 at 7; 62-8).

[4] "A federal court sitting in diversity applies the federal standard for determining whether a preliminary injunction should be granted." *Travelhost, Inc. v. Figg*, no. 3:11-cv-455, 2011 WL 6009096 at *2 (N.D. Tex. 2011) (citing *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) ("[F]ederal law governs the procedural question [of] when a preliminary injunction may issue. However, pursuant to the choice-of-law provision in the Agreement, the court will apply Texas law, including the Covenants Not to Compete Act, Tex. Bus. & Com. Code Ann. § 15.50 et. seq., in deciding substantive matters. *See, e.g., Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

*A. Likelihood of Success on the Merits*

As an initial matter, the Court must determine whether Defendants Thomas and Stamates have/are participating in the publication of GETAWAY magazine, as both aver that they neither own nor work for GETAWAY magazine and that only their respective spouses have an interest in that publication. (Docs. 48-1 at 2; 62-1 at 6). As for Defendant Thomas, the evidence establishes that he is personally bound by the covenant not to compete. (Doc. 32 at 54). Thomas is also a registered member/manager of Thomas Media, LLC -- a Utah Limited Liability Company, which is listed as the "publisher" in GETAWAY Salt Lake magazine. (Docs. 32 at 54; 32-21 at 2; 93 at 16-28). Thus, the Court concludes there is substantial evidence that Defendant Thomas is involved in the publication of GETAWAY magazine.

On the other hand, Plaintiff has not presented sufficient evidence that Defendant Stamates was involved in GETAWAY magazine. The affidavit of a former Travelhost distributer that she was told by third parties that Defendant Stamates and her husband had represented that GETAWAY magazine was replacing *Travelhost* magazine in that market (Doc. 92 at 2-3; Doc. 93 at 41) does not amount to a clear showing that Defendant Stamates was/is involved in the publication or distribution of GETAWAY magazine. *See Mazurek v. Armstrong*, 520 US 968, 972 (1997); *Okpalobi v. Foster*, 190 F.3d 337, 342 (5th Cir. 1999) (a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion). Moreover, Plaintiff does not contend, nor

is there evidence, that Defendant Stamates' spouse is also bound by the covenant not to compete. Thus, Plaintiff's request for preliminary injunction should be denied as to Defendant Stamates.

As to the remaining Defendants, who argue that because they are not in competition with Plaintiff and, thus, not in breach of contract, the evidence does not support their position. A review of the evidence, including samples of the actual publications, reveals that GETAWAY and *Travelhost* magazines are nearly identical in substance and that they serve the same markets. Contrary to Defendants' arguments that the two companies have different business models and different sources of revenue, the evidence shows that *Travelhost* and GETAWAYmagazines are both in the business of selling advertising space in their publications to travel-oriented businesses, and that both magazines are marketed to tourists. Indeed, the publications solicit advertising sales from the same sources and distribute their product at many of the same locations. The fact that Travelhost contracts with independent distributers to sell advertising space and distribute its magazines, does not change the fact the two publications are in direct competition. Moreover, Defendants' argument that GETAWAY magazine is a better product than *Travelhost* magazine is immaterial. (Docs. 94 at 8, 16-18).

Defendants next argue that, even if the Court finds that they are in competition with Travelhost, the covenants not to compete are unenforceable. *E.g.* Doc. 40 at 10-16. The enforceability of the non-compete agreement is a question of law for the Court. *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 643 (Tex. 1994). The Texas Business and Commerce Code governs the enforceability of a covenant not to compete, and provides:

> Notwithstanding Section 15.05 [which generally declares restraints on competition unlawful] of this code, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a

> greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COMM. CODE § 15.50. The threshold issues for enforceability of a non-compete covenant is whether (1) there is an otherwise enforceable agreement and (2) the covenant restricting competition is ancillary to that agreement. *Am. Exp. Fin. Advisors, Inc. v. Scott*, 955 F.Supp 688, 691 (N.D. Tex. 1996) (citing *Light*, 883 S.W.2d 642). If those questions are answered in the affirmative, the Court next determines whether the limitations on competition imposed by the non-compete covenant are reasonable and no more restrictive than necessary. *Id*.

Defendants do not contest that theirs are otherwise enforceable agreements, but argue that the covenants not to compete are not ancillary to, or part of, those otherwise enforceable agreements. The "otherwise enforceable agreement" requirement is satisfied when the covenant is "part of an agreement that contained mutual non-illusory promises." *Light*, 883, S.W.2d at 646.

Here, the Agreements between the parties provided that Defendants would not compete against Plaintiff during the period covered by the Agreements or within two years after the agreements were terminated, in exchange for, *inter alia*, being granted a license to use Plaintiff's trademark and logo, and receiving the revenues from the advertising Defendants sold. (Doc 32 at 11-22, 37-46, 53-60, 76-82, 90-98). In short, there was an offer, acceptance, and consideration for the mutual promises. *See Marsh USA Inc. v. Cook*, _ S.W. 3d _, 2011 WL 6378834 at *6 (Tex. 2011). Thus, the Agreements were "otherwise enforceable" between Plaintiff and Defendants.

Defendants' argument that the non-competition covenants were neither ancillary to, nor part of, an otherwise enforceable agreement, also lacks support.[5] (Docs 40 at 14-16; 44 at 13-15; 47 at 12-14; 52 at 13-15). The Texas Supreme Court has recently clarified the phrase "ancillary to or part of an otherwise enforceable agreement." That court noted that there is no requirement that "consideration for the otherwise enforceable agreement give[] rise to the interest in restraining the employee from competing." *Marsh*, 2011 WL 6378834 at *9. "Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus; and there is no textual basis for excluding the protection of much of goodwill from the business interests that a noncompete may protect." *Id*. at 9.

The *Marsh* court upheld a covenant not to compete where "the business interest being protected (goodwill) [was] reasonably related to the consideration given (stock options)." *Id*. at *14. In this case, by granting Defendants the right to use its trademarks and logos, along with the opportunity to keep the revenues derived from selling advertising, Travelhost linked Defendants' pecuniary interests with Travelhost's interest in protecting the company's goodwill: namely, the relationships developed with its customers and advertisers. Thus, the covenants not to compete at issue here were ancillary to, or part of, otherwise enforceable agreements.

Finally, Defendants contend that the covenants not to compete are unreasonable in scope because the number of activities conceivably restricted under the clauses is "incredibly large." *See,* e.*g*. Doc. 40 at 11. However, the undersigned concludes otherwise. In each instance, the covenant is limited to two years following the termination of the Agreement and restriction only applies within the "designated area" associated with the Agreement. (Doc. 32 at 16, 39, 59, 78,

---

[5] At the January 6, 2012 hearing, Defendants appeared to abandon this argument. Nonetheless, the Court addresses this threshold issue.

97). Moreover, the covenants specifically prohibit Defendants from engaging in a "similar business or one competitive with Publisher" or "similar business or one competitive with Publisher, the Publication, any other authorized distributer of the Publication, or any other TRAVELHOST products."[6] *Id*. Non-compete covenants similar to the ones at issue here have been held by Texas Courts to be reasonable. *See e.g., Property Tax Assoc., Inc.*, 800 S.W.2d at 350; *J. Llewellyn v. Borin*, 569 S.W.2d 946, (Tex.App.—Texarkana 1978). Here, the covenants not to compete impose no greater restraint than necessary.

Accordingly, Plaintiff has hown a substantial likelihood of succeeding on the merits as to Defendants Brady, Nickerson, Thomas, and the Seeleys.

*B. Threat of Irreparable Injury*

To show a threat of irreparable injury, a plaintiff must demonstrate that "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson,* 804 F.2d 1390, 1394 (5th Cir. 1986) (citations omitted). In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury, so enforcement appears to be the rule rather than the exception. *Am. Express Fin. Advisors v. Scott*, 955 F.Supp. 688, 693 (N.D. Tex. 1996); *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F.Supp. 1349, 1354 (N.D.Tex. 1991) (Fitzwater, J.).

In a situation where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable and damages are impossible to calculate. *Id*. (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,* 658 F.2d 1098, 1102 n. 8 (5th Cir. 1981)). In this case, Plaintiff has demonstrated the threat of irreparable harm by Defendants' breach of the Agreements through evidence of lost

[6] Although Plaintiff suggests that Defendants are engaged in online competition, Plaintiff only offered evidence relating to the competing magazines.

goodwill with the clients and advertisers, manifested in lost distribution and advertising opportunities now and in the future.

Defendants mistakenly rely on the Court's holding in *Travelhost v. Figg* to support their claim that Plaintiff has failed to prove irreparable injury. 2011 WL 6009096 (N.D. Tex. Nov. 22, 2011) (Fitzwater J.); (Doc. 94 at 11). *Figg* is easily distinguished, however. In *Figg*, Chief Judge Fitzwater declined to grant Travelhost a preliminary injunction against a former distributer because Travelhost had failed to establish a substantial threat of irreparable injury. *Figg*, 2011 WL 6009096 at *4. The Court's ruling turned on the fact that the defendant-distributer was no longer competing with Travelhost at the time the injunction was sought. *Id*. at *5 n. 10. Here, however, Travelhost has shown that the Defendants are currently breaching the covenants not to compete.

Accordingly, Plaintiff has demonstrated a threat of irreparable injury.

*C. Threatened Injury Outweighs any harm to the Defendants*

While Defendants' venture in GETAWAY magazine obviously will be negatively impacted by the grant of a preliminary injunction, that harm does not outweigh the harm Plaintiff continues to suffer through lost goodwill and business. *Am. Express*, 955 F.Supp. at 693. The covenants at issue did not prevent Defendants from engaging in other types of businesses or from directly competing with Travelhost in geographical areas other than those specifically designated in their respective Agreements. Enforcement of the covenants not to compete through the issuance of a preliminary injunction merely restricts Defendants to limitations they were fully aware of and freely agreed to at the time they entered into the Agreements.

*D. Public Interest*

Texas law favors the enforceability of covenants not to compete and the enforceability of valid contracts. (TEX. BUS. & COMM. CODE § 15.50; *Marsh USA Inc., v. Cook*, No. 09-0558 at 5-19; *Courtroom Sciences, Inc. v. Andrews*, 2009 WL 1313274, *15-16 (N.D. Tex. 2009). Thus, issuance of a preliminary injunction serves the public interest. Defendants' argument -- that Plaintiff does not have clean hands because, as reported by some media outlets, Plaintiffs withheld important financial information from potential distributers (*see, e.g*., Doc. 40 at 19-24) -- wholly lacks merit. In this case, prior to executing the Agreement, each Defendant acknowledged that: (1) Plaintiff did not provide or promise financial projections or any other promises or representations; (2) Defendant read and was familiar with the covenant not to compete; and (3) Defendant had an opportunity to conduct their own investigation and consult with professionals before entering into the Agreement. (Doc. 32 at 12-13, 40, 45-46, 55-56, 81, 89, 92, 94).

**III. Equitable Extension of the Covenants Not to Compete**

Travelhost is seeking injunctive relief for a period of two years from the date of cessation of Defendants' competitive activities, whether voluntary or by virtue of the preliminary injunction. (Doc. 31 at 22, n.14). Defendants counter that any extension of the non-compete covenants is unwarranted, punitive, and harmful to the public. (Doc. 94 at 4-5, 17-18).

A district court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete. *Guy Carpenter & Co, Inc., v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). Under Texas law, covenants not to compete can be equitably extended if the violations of the covenant were "continuous and persistent." *Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex.App.—Waco 2007, review denied).

Here, the evidence establishes that Defendants' violations of the covenants not to compete have been continuous and persistent. Moreover, allowing Defendants to benefit from their alleged violations, which have already spanned nearly two years, would render the covenants meaningless. Accordingly, the Court recommends that the preliminary injunction enjoin Defendants Brady, Nickerson, Thomas, and the Seeleys from violating the covenants not to compete until the earlier of two years from the date the preliminary injunction is entered or the date on which final judgment is entered in this case.

## IV. BOND

The party moving for a preliminary injunction must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The amount of that security "is a matter for the discretion of the trial court." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

Plaintiff contends that a reasonable bond in this case is $10,000.00 per Defendant. (Doc. 92 at 9). Defendants submit that a reasonable bond in this case is $200,000 per defendant, per year, based on Defendant's total income estimates. (Doc. 94 at 23). However, even after the Court invited the parties to submit briefs and/or evidence on the issue of bond, Defendants failed to provide the Court with more than conclusory statements. In its untimely reply (Doc. 18),[7] Plaintiff submitted evidence by way of the Selleys' profit and loss statements, covering the period from July 2010 to November 2011, in which the Seeleys state that they earned approximately $1,187 per month through GETAWAY. (Doc. 95 at 11-12). Concluding that a realistic figure lies somewhere between the two extremes, the undersigned finds that a reasonable

[7] During the January 6, 2012 hearing, the Court ordered that response briefs were due January 13, 2012, and any reply briefs were due January 16, 2012.

security, under the facts and circumstances of this case, is $25,000 per Defendant enjoined (with the bond for the Seeleys combined), for a total of $100,000.

## V. CONCLUSION

Thus, for the reasons discussed herein, it is recommended that Plaintiff's *Motion for Preliminary Injunction* (Doc. 30) be **GRANTED** as to Defendants Brady, Nickerson, Thomas, Tiffany Seeley, and Andrew Seeley.

**IT IS RECOMMENDED** that the motion be **DENIED** as to Defendant Donna Stamates.

**IT IS RECOMMENDED** that any other relief sought by the motion that is not expressly granted be **DENIED**.

**IT IS RECOMMENDED** that Defendants Brady, Nickerson, Thomas, Tiffany Seeley, and Andrew Seeley be **ENJOINED** from, individually or directly or indirectly through the activities of any entity owned or controlled by them in whole or in part:

1. Being involved in publishing, distributing, promoting, or selling advertising for inclusion in GETAWAY Magazine or any other publication competitive with *Travelhost* magazine within their respective Designated Area;

2. Soliciting advertisements from any advertisers for GETAWAY magazine or any other publication competitive with *Travelhost* magazine within their respective Designated Area;

3. Seeking or obtaining distribution of GETAWAY magazine or any other publication competitive with *Travelhost* magazine within their respective Designated Area; and/or

4. Pursuing or entering into any sale, transfer, or assignment of any ownership interest or licensing rights with GETAWAY magazine within their respective Designated Area.

5. Acting in concert with third parties to engage in any of the activities listed above.

**IT IS RECOMMENDED** that Plaintiff be required to post a security bond of $25,000 per Defendant enjoined (with the bond for the Seeleys combined), for a total of $100,000.

SIGNED February 1, 2012.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE