## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TRAVELHOST, INC.,**<br>A corporation | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| Vs. | § | **Civil Action No. 3:11-CV-00454-M** |
| | § | |
| **JENNIFER LEA BRADY, ANDREW &** | § | |
| **TIFFANY SEELEY, BRIAN S. THOMAS,** | § | |
| **ROBERT NICKERSON, JR., and DONNA A.** | § | |
| **STAMATES** | § | |
| | § | |
| **Defendants.** | § | |

---

## FIRST AMENDED COUNTERCLAIM OF
## DEFENDANT DONNA A. STAMATES

---

TO THE UNITED STATES DISTRICT JUDGE:

Subject to her First Amended Answer, and without waiving her First Amended Answer, Defendant Donna A. Stamates (hereinafter "Defendant" or "Stamates"), files this First Amended Counterclaim pursuant to the Memorandum Opinion and Order of this Court dated September 27, 2012, and in support thereof, would show the following:

Defendant Stamates incorporates herein, as if set forth at length, her First Amended Answer filed on November 14, 2011, and pursuant to the Court's Order of September 27, 2012, files her First Amended Counterclaim against Plaintiff Travelhost, Inc. as follows.

# I.

## FIRST AMENDED COUNTERCLAIM

### A.  FACTS

1.      Counter-Plaintiff, Donna Stamates, entered into a Distributorship Agreement and Optional Associate Publisher's Agreement (referred to jointly herein as the "Agreement") with Counter-Defendant, Travelhost, effective November 5, 2003.  A true and correct copy of which is attached hereto as Exhibit A.

2.      Prior to executing the Agreement, Ms. Stamates attended a "Day of Discovery" presentation at Travelhost's corporate offices where Travelhost represented to Stamates that it had specialized knowledge of the industry and that they would provide  information and experience that Ms. Stamates could rely on to publish the magazine that they would license to Ms. Stamates.  Attached as Exhibit "B" are true and correct copies of documents that Ms. Stamates received in connection with her visit to Dallas to attend the "Day of Discovery." During the "Day of Discovery," Travelhost made numerous representations to Ms. Stamates to induce her to become a distributor and an associate publisher in Travelhost.  Travelhost represented that Ms. Stamates was in a very select group of individuals who had gone through an extensive vetting process to determine if Ms. Stamates was the right fit to be a Travelhost distributor. If selected, Travelhost represented that Ms. Stamates would have a rewarding and personally satisfying business that would allow flexibility and provide an outstanding income. During the "Day of Discovery," material misrepresentations that were false were made to Ms. Stamates.  The misrepresentations were made by representatives of Plaintiff Travelhost, Inc., who at all times were acting within the course and scope of their employment for Travelhost. The representatives of Travelhost knew that their representations were false when they made the

representations, or they made the representations recklessly, without any knowledge of the truth, and as positive assertions. Travelhost made the misrepresentations with an intent that Ms. Stamates should rely upon them, and Ms. Stamates did rely upon the representations, and as a result of their misrepresentations, Ms. Stamates suffered damages.

3.     The Travelhost representative who made material misrepresentations to Ms. Stamates was Mike Slabaugh, a senior director of market expansion for Travelhost. The misrepresentations were made by Mr. Slabaugh to Ms. Stamates in Dallas on Friday, October 24, 2003. In conversations with Mr. Slabaugh on October 24, 2003, in the conference room at Travelhost headquarters in Dallas, Mr. Slabaugh made false statements about the printing prices charged by Travelhost to potential distributors, such as Ms. Stamates. The specific false misrepresentations made by Mr. Slabaugh to Ms. Stamates dealt with printing prices that Travelhost would charge Ms. Stamates. Mr. Slabaugh represented that the printing prices would be wholesale prices. Mr. Slabaugh represented that Ms. Stamates could not receive the same prices from third party printers which would be competitive with the wholesale prices charged by Travelhost. Mr. Slabaugh specifically represented to Ms. Stamates that the price she would be charged for a layout and printing of the Travelhost magazine was a wholesale price and that the Travelhost pricing was the best pricing she could get. Mr. Slabaugh told Ms. Stamates that she would not be able to find retail prices as competitive. Ms. Stamates trusted Travelhost and believed the information they provided to her regarding pricing. Much, much later, Ms. Stamates learned that the representations made to her regarding the prices that Travelhost would charge for printing the Travelhost magazine were false. In fact, Ms. Stamates learned that the alleged wholesale prices charged by Travelhost far exceeded what local competitors of Ms. Stamates were being charged by commercial retail printers. If Ms. Stamates had been told the

truth about the printing prices charged by Travelhost, then Ms. Stamates would not have entered into the 2003 Agreement that she signed with Travelhost.  The statements made by Mr. Slabaugh were fraudulent because they intentionally misstated and mislead Ms. Stamates into believing that the prices charged by Travelhost were not only competitive, but were wholesale prices which she would not be able to attain outside of the Travelhost relationship.  In addition, the misrepresentations that Mr. Slabaugh made to Ms. Stamates were false statements of fact, and they were promises of future performance made with an intent not to perform them, or they were statements of opinion based on a false statement of fact; alternatively, they were expressions of opinion that were false when made by Mr. Slabaugh, who claimed or implied to have special knowledge of this subject matter, i.e. the prices charged by Travelhost to distributors such as Ms. Stamates and industry pricing, in general.  Ms. Stamates justifiably relied upon Mr. Slabaugh's statements because Mr. Slabaugh represented that he was knowledgeable about the printing industry, and that he knew and was familiar with printing prices for distributors such as Ms. Stamates.  However, Ms. Stamates later learned that Travelhost had no intention of charging Ms. Stamates wholesale prices as represented by Mr. Slabaugh when Ms. Stamates entered into her written agreement with Travelhost.

4.      Ms. Stamates alleges that had she understood that the pricing rates which Travelhost referred to as wholesale prices were, in fact, not competitive prices with what local competitors were being charged by commercial printers, then Ms. Stamates would not have signed the 2003 Agreement to become a distributor with Travelhost.

5.      Ms. Stamates did not become aware of the fraudulent misrepresentations that Travelhost made to her prior to the time she signed her Agreement with Travelhost. Instead, Ms. Stamates first became aware of the fraudulent misrepresentations in October of 2009.  At this

time, Ms. Stamates became aware of a blog referred to as "Publisher's Advocate." In late 2009, Stamates began reading the Publisher's Advocate; and she found out about the fraudulent pricing practices that Travelhost utilized. Ms. Stamates printed her final magazine for Travelhost in May/June 2010. At that time, Ms. Stamates became aware of the fact the she had been overcharged for printing over a seven (7) year period by approximately $3,500.00 per month.

6.      After learning the above information, Ms. Stamates filed a Complaint with the FTC against Travelhost. A true and correct copy of the Complaint is attached as Exhibit "C." In this Complaint, filed on July 10, 2010, Ms. Stamates stated that Travelhost told her that she "would receive whole sale pricing for the printing that Travelhost, Inc. would do on the magazine." Ms. Stamates also stated in her FTC Complaint that "it recently came to my attention that the pricing is way above any wholesale pricing and that Travelhost has built-in marketing expense for approximately $1,850.00 per month that I was never aware of." The attached FTC Complaint supports Ms. Stamates' allegation that she did not become aware of Travelhosts' fraudulent misrepresentations regarding the "wholesale pricing" that Travelhost charged her until approximately 2009. This was well within four (4) years of the Plaintiff filing this lawsuit in 2011 against Ms. Stamates. Thus, Ms. Stamates specifically alleges that Travelhost fraudulently concealed the truth from Ms. Stamates regarding the prices that it charged, and that Travelhost, through its representatives, knew that the prices it was charging Ms. Stamates were in excess of wholesale prices, but Travelhost concealed these facts from Ms. Stamates in order to deceive Ms. Stamates and to induce her to become a distributor. In short, Travelhost's fraudulent concealment is established by the tort committed by Travelhost, the knowledge that Travelhost possessed regarding the prices it was charging Ms. Stamates, the

deception that Travelhost used to keep the information from Ms. Stamates, and Ms. Stamates reasonable reliance upon the deception of Travelhost.

## B.    COUNT 1 – FRAUDULENT INDUCEMENT

7.    Travelhost made representations to Ms. Stamates concerning the printing prices charged by Travelhost were wholesale as outlined above and these statements were material misrepresentations as stated above.

8.    Travelhost's representations to Ms. Stamates were material and meant solely to induce Ms. Stamates to execute the Travelhost Agreement.

9.    Travelhost's representations to Ms. Stamates were false statements of fact, false promises of future performance, and amounted to false representations.

10.    Travelhost made the false representations knowing they were false.

11.    Travelhost intended for Ms. Stamates to rely on the false representations.

12.    Ms. Stamates justifiably relied on Travelhost's false representations when Ms. Stamates executed the Agreement.

13.    Travelhost's false representation directly and proximately caused injury to Ms. Stamates.

## C.    DAMAGES

14.    As a direct and proximate result of Travelhost's conduct, the Ms. Stamates suffered the following injuries:

      a.    Out-of-pocket damages;

      b.    Benefit-of-the bargain damages;

      c.    Lost profits;

      d.    Mental anguish; and

    d.    Exemplary Damages.

## II.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Donna A. Stamates, prays that Plaintiffs' take nothing, that Ms. Stamates have recovery against the Plaintiff on her Counterclaim, and Defendant prays for all other relief, both general or special, at law or in equity to which she is entitled.

Respectfully submitted,

/s/ Joseph E. Byrne
JOSEPH E. BYRNE
State Bar No. 007871178
JOHN K. DUNLAP
State Bar No. 06235300

BYRNE, CARDENAS & ARIS, LLP
7557 Rambler Road
Suite 1400
Dallas, Texas 75231
(972) 371-5250
(972) 371-5270 (Facsimile)

**ATTORNEYS FOR DEFENDANT DONNA A. STAMATES**

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that a true and correct copy of the foregoing instrument has been served on all attorneys of record, as listed below, on the 10th day of October, 2012.

| | |
|---|---|
| ***Via Facsimile 972.432.8729 & First Class Mail***<br>John A. Price, Esq.<br>Travelhost, Inc.<br>10701 Stemmons Freeway<br>Dallas, Texas 75220 | ***Via Facsimile 214.745.5390 & First Class Mail***<br>J. Jay Madrid, Esq.<br>Kristen L. Sherwin, Esq.<br>Elisabeth A. Wilson, Esq.<br>WINSTEAD, PC<br>1201 Elm Street<br>5400 Renaissance Tower<br>Dallas, Texas 75270 |
| ***Via First Class Mail***<br>Jennifer Brady<br>c/o Getway Media<br>801 Hawthorne Lane<br>Charlotte, North Carolina 28204 | ***Via First Class Mail***<br>Robert Nickerson, Jr.<br>PO Box 161418<br>Sacramento, California 95816 |
| ***Via First Class Mail***<br>Andrew Seeley<br>1319 Silver Linden Way<br>Gardenerville, Nevada 89410 | ***Via First Class Mail***<br>Tiffany Seeley<br>1319 Silver Linden Way<br>Gardenerville, Nevada 89410 |
| ***Via First Class Mail***<br>Brian S. Thomas<br>c/o Getway Media<br>401 Hawthorne Lane<br>Charlotte, North Carolina 28204 | |

_/s/ Joseph E. Byrne_
JOSEPH E. BYRNE