**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TRAVELHOST, INC.,** | § | |
| | § | |
| **Travelhost,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-454-M-BK** |
| | § | |
| **JENNIFER LEA BRADY,** *et al.,* | § | |
| | § | |
| **Defendants**. | § | |

**FINDINGS, CONCLUSION AND RECOMMENDATION**

This case has been referred to the undersigned for pretrial management.  Now before the

Court is the *Motion for Partial Summary Judgment of Defendant Donna Stamates*.  (Doc. 154).

For the reasons discussed below, the motion should be **DENIED.**

Background

Plaintiff Travelhost Inc., publisher of TRAVELHOST Magazine, brought this action

against several of its former distributors, including Defendant Donna Stamates, for breach of

contract, tortious interference, and conspiracy, all stemming from their alleged involvement with

a competing publication.[1]  (Doc. 4 at 14-22).  On October 25, 2012, Defendant Stamates filed a

motion for leave to file her *Motion for Partial Summary Judgment*, citing the fact that she had

only recently obtained counsel.  (Doc. 153).  After a hearing, the motion for leave was granted

over Plaintiff's objection, and Plaintiff was granted until December 26, 2012 to file its response.

The Court also extended the discovery deadline to March 31, 2013.

In her motion for partial summary judgment, Defendant Stamates seeks summary

judgment in her favor for all claims asserted against her in Travelhost's First Amended

---

[1]  Travelhost has since settled its claims against all Defendants except Donna Stamates and
Jennifer Brady.

Complaint, except Travelhost's breach of contract claim.  Specifically, she argues that the evidence establishes that she is not liable for "(1) breach of a covenant not to compete; (2) tortious interference; (3) conspiracy; (4) permanent injunctive relief; (5) constructive trust; and (6) an accounting."  (Doc. 154-1 at 4).  In support of her motion for summary judgment, she offers her own affidavit and that of Defendant Jennifer Brady, which Defendant Stamates avers collectively establish that there is no genuine issue of material fact as to the claims asserted against her.  *Id*. at 5.  Subsequently, Defendant Stamates was granted leave to file additional evidence, to-wit, the affidavit of Sue Vanatta, President and CEO of the Lebanon-Wilson County Chamber of Commerce.  (Doc. 198).

Travelhost timely filed its response to Defendant's motion for partial summary judgment, and was later permitted to file a supplemental response.  (Docs. 186, 191).  Subsequently, with leave of court, Travelhost deposed Defendant Stamates, Tom Stamates, and Sue Vanatta, and then moved for leave to supplement its summary judgment evidence with excerpts of their deposition testimony.  (Doc. 206).  That motion for leave was granted contemporaneously with this recommendation.

Applicable Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment has the initial burden of  "informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotes omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

Analysis

*1. Breach of Covenant Not to Compete*

Defendant Stamates argues that her proffered affidavits "establish[] as a matter of law, that Stamates did not violate her covenant not to compete." (Doc. 154-1 at 7).  In her affidavit, Defendant avers that she "did not own or work in a similar business or one competitive with Travelhost in the five (5) years prior to the expiration of [the] non-compete agreement which expired on July 22, 2012" and that she did nothing to violate the non-compete agreement.  (Doc. 154-2 at 4).  The affidavit further states that Defendant Stamates' husband, Tom Stamates, is the owner and sole operator of Getaway of Nashville Magazine, and that he was neither an employee of Travelhost of Nashville nor party to a non-compete agreement with Travelhost.  *Id*. at 3-4.  Co-Defendant Jennifer Brady, President of Getaway Magazine, states in her affidavit that Donna

Stamates "is not now and has never been an employee of Getaway Magazine or Getaway nor has Donna Stamates ever been a distributor, publisher, agent or representative thereof." (Doc. 154-3 at 2).

In response, Travelhost argues that the non-compete agreement provides that Defendant Stamates not "engage in similar business or one competitive with TRAVELHOST," and that "engage" includes "'devote time, attention and/or labor to,' 'enter into,' 'involve oneself or participate in,' and/or 'arrange for.'" (Doc. 186 at 22). Travelhost argues that the evidence establishes that the initiation of Getaway was a collective effort of the Stamates because within days of Defendant Stamates' termination of her contract with Travelhost, the Getaway bank account was established, plans were made to publish the first issue of GETAWAY Magazine, and Getaway had the same advertising customers and distributors as Travelhost. *Id.* at 26. Travelhost concludes that there exists a genuine issue of material facts as to whether the actions of Tom Stamates, in competing with Travelhost, may be attributed to Defendant Stamates. *Id.* at 27. Travelhost cites several cases in which courts have enjoined both a party to a covenant not to compete and also the spouse of the party who carried on a competitive business under a seemingly separate entity, even when the spouse was not a party to the covenant not to compete. *Id.* at 23-25.

In support of its arguments, Travelhost relies on the affidavit of Brenda Cantrell, Vice President of Marketing for Travelhost, and a copy of the Wilson County Chamber of Commerce information guide to establish that, at least during the calendar year 2012, Donna and Tom Stamates d/b/a Getaway Magazine of Nashville were listed as members of the Wilson County Chamber of Commerce, which is part of the designated area covered by the distributorship agreement Stamates entered into with Travelhost. (Doc. 191-1 at 2). Travelhost also offers

excerpts of the deposition testimony of Defendant Donna Stamates, Tom Stamates, and Sue

Vanatta, as follows:

- Tom Stamates' testimony that TRAVELHOST of Nashville and GETAWAY of Nashville were not legal business entities registered in the state, and the income received from both ventures was reported on the Stamates' joint tax return.  (Doc. 206-1 at 2; Doc. 206-2 at 80-81).

- Donna Stamates' testimony that GETAWAY Magazine has been her sole source of income for personal and living expenses, and that she has had no source of income from 2001 until now, and the income from.  (Doc. 206-1 at 2; Doc. 206-3 at 5-7, 116).

- Donna Stamates' testimony that Tom Stamates handled the couple's finances, and "all of the personal and living expenses for the couple were paid out of the business bank accounts of TRAVELHOST Magazine and GETAWAY Magazine, respectively."  (Doc. 206-1 at 2; Doc. 206-3 at 17-18; 117-18).

- Testimony of both Stamates that TRAVELHOST of Nashville and GETAWAY of Nashville shared the same P.O. Box, location, equipment, and home office, and the Stamates claimed the depreciation of equipment shared by the entities on their respective joint federal tax returns.  (Doc. 206-1 at 3; Doc. 206-2 at 69, 179-87).

- Testimony of both Stamates that Donna Stamates was aware of the activities of her husband in connection with GETAWAY Magazine, and that Donna Stamates helped her husband prepare letters, billing invoices, and additionally drove and accompanied her husband on visits to meet advertisers for GETAWAY.  (Doc. 206-1 at 6; Doc. 206-2 at 100, 126; Doc. 206-3 at 107, 110-112, 136-137, 141).

Defendant Stamates expends the first five pages of her reply asserting evidentiary

objections to several of the statements contained in the affidavits submitted by Travelhost.[2]

(Doc. 188 at 1-5).  She maintains that there is not a genuine issue of material fact, argues that

Travelhost's summary judgment evidence focuses on complaints about her husband's activities,

and asserts that Travelhost's goal in pursuing this court action is to drive her husband out of

business.  *Id*. at 5-6.  She offers as additional evidence the affidavit of Sue Vanatta, President and

CEO of the Lebanon-Wilson County Chamber of Commerce, which states that it was by mistake

---

[2] Because the Court does not rely on these statements in reaching its conclusion, Defendant Stamates' objections are denied as moot.

that both Tom and Donna Stamates were listed as owners of GETAWAY Magazine of Nashville in the Wilson County Chamber of Commerce information guide.  (Doc. 198 at 2; Doc. 198-1 at 4).

Based on the arguments and evidence, the Court finds that a genuine issue of material fact remains regarding whether Defendant Stamates violated the covenant not to compete through her participation in her husband's GETAWAY Magazine.  The affidavits submitted by Defendant Stamates are largely self-serving and conclusory.  *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (affidavits stating "ultimate or conclusory facts and conclusions of law" standing alone are insufficient to support a grant or denial of summary judgment).  That notwithstanding, Defendant Stamates has neither argued nor offered evidence that she was not bound by the non-compete covenant with Travelhost.  Nor does she suggest that GETAWAY Magazine of Nashville was <u>not</u> a competitor of  TRAVELHOST Magazine of Nashville.  Her sole argument and basis for requesting judgment is that, regardless of her husband's activities, she did not violate the non-compete agreement.  However, while the parties might contest the degree of Defendant Stamates' involvement with GETAWAY, the competent summary judgment evidence establishes that she was, in fact, involved.  Whether that involvement was sufficient to breach her covenant not to compete with Travelhost, remains a question for the finder of fact.  Accordingly, Defendant Stamates' motion for summary judgment as to this claim should be **DENIED**.

*2. Tortious Interference*

Defendant Stamates simply argues that her affidavit establishes as a matter of law that she is not guilty of tortious interference.  (Doc. 154-1 at 7).  In her affidavit, she avers that she has "never willfully and intentionally interfered with any contractual agreement that Travelhost

has or had with any of its' [*sic*] distributors" through pursuit, communication, or inducement of local distributors to end their contractual relationships with Travelhost to switch to a competitive publication.  (Doc. 154-2 at 5).

Travelhost contends that Defendant Stamates and Tom Stamates conspired to tortiously interfere with the contractual relationships between Travelhost and its advertisers and distributors.  (Doc. 186 at 29).  Travelhost avers that practically all of the local businesses that the Stamates formed relationships with while Defendant Stamates was still working with Travelhost ended their contracts with Travelhost and entered contracts with Getaway around the time that Defendant Stamates left Travelhost.  *Id*.  Travelhost further alleges that Getaway's acquisition of Travelhost's former clients could not have been facilitated without Defendant Stamates' help and consequential tortious interference with Travelhost's contractual agreements with these clients.  *Id*. at 29-30.

In support, Travelhost offers Defendant Stamates' own testimony that she prepared letters to Travelhost's advertisers to promote GETAWAY, and that she sometimes accompanied or drove her husband when he called on former TRAVELHOST advertisers and distributers.  (Doc. 206-3 at 107-109, 110-113, 136-137, 141).  Travelhost also relies on the deposition testimony of Tom  Stamates that, with his wife's knowledge, he approached TRAVELHOST Magazine advertiser Casa Fiesta in June 2010, advised that his wife would no longer be distributing TRAVELHOST, and solicited that advertiser's business for GETAWAY Magazine.  (Doc. 206-2 at 126).  Finally, Travelhost offers the affidavit of Jim South, the Chief Financial Officer of Travelhost, Inc., explaining, *inter alia*, the nature of the Travelhost Distributorship Agreement and Optional Associate Publisher Agreement entered into by Donna Stamates and other

Defendants, and that "[b]y letter dated May 22, 2010, Stamates gave notice of her intent to terminate the Agreements effective July 12, 2010.  (Doc. 32 at 7-9).

Defendant Stamates argues in her reply that the advertising agreements she entered into on behalf of Travelhost were terminable at will and did not obligate the hotels to any future commitment with Travelhost.  (Doc. 188 at 7).  She also argues that by submitting the additional evidence of her and her husband's deposition testimony, Travelhost is "waging a personal vendetta against [the Stamates] in an attempt to run Mr. Stamates out of business."[3]  (Doc. 210 at 2-3).

Under Texas law, the elements of tortious interference are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."  *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).  In this case, Travelhost alleges the existence of its distribution and advertising agreements with advertisers and lodging properties, and offers circumstantial evidence that these agreements were intentionally or willfully interfered with due to actions of Defendant Stamates in concert with Tom Stamates.  Defendant Stamates attempts to negate this allegation by simply reasserting that she is not liable for tortious interference.  She further attempts to support her denial through the equally conclusory statements in her affidavit.  (Doc. 154-2 at 5).  Again, affidavits like that of Defendant Stamates which state only "ultimate or conclusory facts and conclusions of law" are insufficient to support

---

[3] In her response to Travelhost's Motion for Leave to File Supplement Evidence of the deposition transcripts (Doc. 210), Defendant Stamates additionally attempts to introduce evidence of the deposition testimony of Sue Vanatta as supplemental evidence of Travelhost's attempts to drive Mr. Stamates out of business.  *Id*. at 3.  Even if it had been relevant, Defendant Stamates is not permitted to offer additional summary judgment evidence by way of her response.

a grant of summary judgment. *Galindo*, 754 F.2d at 1216. Accordingly, Defendant Stamates has failed to demonstrate that there is no genuine issue of material fact as to Travelhost's tortious interference claim and consequentially has failed to shift the burden to Travelhost to show the existence of a factual issue. *See id.* at 1221 ("Mere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant.").

Even assuming, *arguendo*, that Defendant Stamates has met her burden, Travelhost has offered evidence from which it can reasonably be inferred that Defendant Stamates was involved in persuading advertisers and distributors to end their relationship with Travelhost and pursue a relationship with Getaway. At minimum, this evidence raises a factual question as to Defendant Stamates' level of involvement in her husband's business at Getaway and her actions, if any, in encouraging advertisers and distributors to move to Getaway, which is directly relevant to Travelhost's tortious interference claim. Thus, Defendant Stamates' motion for summary judgment on Travelhost's tortious interference claim should also be **DENIED**.

*3. Conspiracy*

Travelhost alleges in its Amended Complaint that Defendant Stamates conspired with others, including Tom Stamates, to "tortiously interfere with TRAVELHOST's contractual and business relationships with advertisers, distribution outlines and its other distributors, as well as induce TRAVELHOST's advertisers, distribution outlets and distributors to terminate their contractual relations with and/or breach their contractual obligations to TRAVELHOST." (Doc. 4 at 20). As with the other claims included in her motion for summary judgment, Defendant Stamates relies on her own affidavit to establish that she is not guilty of civil conspiracy against Travelhost. (Doc. 154-1 at 8). She avers in her affidavit that she has "never agreed with one or more persons to accomplish an object that included one or more unlawful, overt acts against

Travelhost, involving either an unlawful purpose or lawful purpose to be achieved by unlawful means, and that was designed to harm Travelhost" and never possessed specific intent to conspire with others to interfere with Travelhost's contractual relationships.  (Doc. 154-2 at 5-6).

Travelhost argues that Stamates acted "in concert and conspiracy with the remaining Defendants and other co-conspirators in varying out a well orchestrated [*sic*] termination of 6 separate agreements with TRAVELHOST for the express and intended purpose of violating TRAVELHOST'S non-compete covenants and tortiously interfering with TRAVELHOST Magazine's contractual relationships with lodging properties and advertisers in each of the respective local markets."  (Doc. 186 at 30-31).  As supporting evidence, Travelhost offers the portion of South's affidavit in which he explains the nature of the defendants' Distributorship Agreements, the date that each Defendant ended his/her agreements with Travelhost, and Travelhost's activities after discovering the defendants were allegedly involved in the competitive publication Getaway of Nashville.  (Doc. 32 at 7-9).   In reply, Defendant Stamates asserts that Travelhost failed to raise a fact issue that she was involved with Getaway Magazine during her non-compete agreement time frame or that she conspired with others to launch a competing magazine. (Doc. 188 at 7).  Instead, she claims that she left Travelhost because the company refused to assist her in dealing with issues arising from a local flood emergency.  *Id.*

The elements to establish a claim for civil conspiracy are "(1) two or more persons, (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998) (citation omitted)).  Here, Defendant Stamates' conclusory denial of being involved in a civil conspiracy is again insufficient to support summary judgment as to Plaintiff's

civil conspiracy claim.  Consequentially, Defendant Stamates has failed to shift the burden to

Travelhost to show the existence of a genuine issue of material fact.  Moreover, the argument

newly raised in her reply brief that she left Travelhost due to its refusal to assist her with flood

issues actually *creates* a fact question concerning the reason for her departure from the

Travelhost business arrangement, which also warrants denying her summary judgment motion.

Finally, even assuming she has met her burden, based on the evidence previously discussed

herein, Travelhost has at least established that there is a genuine issue of material fact regarding

whether Defendant Stamates' actions in concert with Tom Stamates relating to the establishment

and operation of GATEWAY Magazine are proof of the alleged conspiracy.  As before, such is

an issue for the trier of fact.  Thus, Defendant Stamates' motion for summary judgment as to

Travelhost's civil conspiracy claim should be **DENIED**.

*4. Permanent Injunction, Constructive Trust and an Accounting*

Defendant Stamates argues that because there is no evidence as a matter of law as to

Travelhost's breach of the covenant not to compete, tortious interference and civil conspiracy

claims, she should be entitled to summary judgment on Travelhost's claims for a permanent

injunction and the equitable remedies of a constructive trust and an accounting.  (Doc. 154-1 at

9, Doc. 154-2 at 6).

The four elements a party must establish to secure injunctive relief are: (1) a substantial

likelihood of success on the merits, (2) a substantial threat of irreparable injury if the court does

not grant the requested relief, (3) that the threatened injury outweighs any harm that will result if

the injunction is granted, and (4) the grant of injunctive relief will not disserve the public

interest.  *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  Because it is recommended that

summary judgment be denied as to Travelhost's substantive claims, Travelhost should be

allowed to pursue its claims for injunctive and equitable relief as well.  Therefore, it is

recommended that Defendant's Motion for Summary Judgment as to Travelhost's claims of

injunctive and equitable relief be **DENIED**.

## CONCLUSION

Based on the foregoing, it is recommended that the *Motion for Partial Summary*

*Judgment of Defendant Donna Stamates* (Doc. 154) be **DENIED**.

**SIGNED** July 17, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE